| STATE OF INDIANA | ) | LAPORTE SUPERIOR COURT |
|---|---|---|
| | ) SS: | |
| COUNTY OF LAPORTE | ) | SITTING AT MICHIGAN CITY, INDIANA |

| | | |
|---|---|---|
| JASON FRAZIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 46D01 1 0 0 1 C T 0 0 8 |
| vs. | ) | Cause No. 46D____-1001-CT-_____ |
| | ) | FILED |
| NASH-FINCH COMPANY, | ) | IN CLERKS OFFICE |
| | ) | |
| Defendant. | ) | JAN - 7 2010 |

### VERIFIED COMPLAINT AND JURY DEMAND

COMES NOW the Plaintiff, Jason Frazier, by counsel, Jeffrey S. Wrage of BLACHLY TABOR BOZIK & HARTMAN LLC, for Plaintiff's Complaint against the Defendant, Nash-Finch Company, and states to the Court as follows:

### JURISDICTION

1. Plaintiff, Jason Frazier (hereinafter "Frazier"), resides in Michigan City, county of LaPorte, state of Indiana, and has at all relevant times herein.

2. During all times relevant to Plaintiff's Complaint, Defendant, Nash-Finch Company (hereinafter "Nash-Finch"), is licensed to do business and is engaged in doing business in Westville, county of LaPorte, state of Indiana.

3. During all times relevant to Plaintiff's Complaint, Frazier was employed at Nash-Finch.

### FACTS

4. Frazier is a male who began his employment at Nash-Finch around December 11, 2006.

5. When Frazier became eligible, Frazier opted to participate in Nash-Finch's employment benefits program. Frazier sought healthcare for his previously diagnosed bipolar disorder using his health insurance with Blue Cross Blue Shield, a benefit of his employment at Nash-Finch.

6. Frazier informed Nash-Finch by its agents, servants, supervisors, HR Coordinator and/or co-employees that he was previously diagnosed with and suffers from the effects of bipolar disorder. Frazier informed Nash-Finch by its agents, servants, supervisors, HR Coordinator and/or co-employees that he took prescription medication and received medical treatment for his previously diagnosed bipolar disorder.

7. Nash-Finch placed numerous employees on layoff during 2007. Frazier was temporarily laid off around June 15, 2007. Frazier had no performance problems at Nash-Finch prior to being laid off in June 2007.

8. Frazier returned to work from layoff status round March 31, 2008 to fulltime work. When Frazier returned to work, he performed the job duties of an Item Picker. Frazier was qualified for the position of Item Picker. Frazier was able to perform his job duties with or without accommodation. Mike McGinley was Frazier's supervisor after he returned to work from layoff status.

9. After returning from layoff status, Frazier was subject to frequent derogatory comments and disparate treatment including, insults, intimidation, ridicule and/or jokes, because of his bipolar disorder. Such derogatory comments, insults, intimidation, jokes, gossip and/or rumor about Frazier created a hostile working environment for Frazier. Frazier complained of such derogatory comments, insults, intimidation, jokes, gossip and/or rumor to Nash-Finch by its agents, servants,

2

supervisors, HR Coordinator and/or co-employees.

10. Frazier complained to Nash-Finch (by Mike McGinley) about harassment and discrimination Frazier suffered in the workplace. During June 2008, Frazier began to complain to Nash-Finch about harassment and/or discrimination by his coworkers. Frazier complained to Nash-Finch (by Mike McGinley) that the harassment and discrimination was causing a hostile work environment for Frazier.

11. Nash-Finch failed to correct the harassment and discrimination of which Frazier complained.

12. Nash-Finch took no action to stop the harassment and discrimination of which Frazier complained.

13. Frazier performed his job satisfactorily at Nash-Finch. Prior to his complaints to Nash-Finch about harassment/discrimination and/or hostile work environment, Frazier received no written discipline concerning his job performance. Prior to his complaints to Nash-Finch about harassment/discrimination and/or hostile work environment, Frazier was not told that he was not meeting Nash-Finch's expectations of him or that his performance needed improvement.

14. Around June 19, 2008, Frazier began complaining to Nash-Finch (by its human resource coordinator, Kathy Marion) about the harassment and discrimination he suffered at work. Around June 20, 2008 coworkers at Nash-Finch, including Ryan Schultz, threatened Frazier with physical violence and bodily injury. Frazier complained to Nash-Finch (by Mike McGinley) about the threats of violence made against Frazier by coworkers. Nash-Finch failed to correct the hostile work environment that Frazier complained. Nash-Finch took no action to stop the hostile work environment that Frazier

complained.

15. Frazier again complained to Nash-Finch (by Mike McGinley) around June 26, 2008. Nash-Finch's agent Charles Hurd (a warehouse supervisor) recorded the names of coworkers who Frazier believed were harassing/discriminating and creating a hostile work environment for Frazier. Those named include, Ryan Schultz, Dustin Leach, Chris Watnick, Ken Watnick, Paul Wojick and Tony Melton.

16. After naming his harassers/discriminators, Dustin Leach and Ryan Schultz threatened Frazier. Leach and/or Schultz told Frazier, "I'll kick your ass" and "I'll kill you", and they threaten to "stab" Frazier. Frazier complained to Nash-Finch (by Mike McGinley and Charles Hurd) about the continued hostile work environment. Nash-Finch sent Frazier home for the day, after he complained.

17. About two (2) weeks later, at Nash-Finch, Mike McGinley joked and made derogatory comments about Frazier and his complaints of a hostile work environment. Frazier was insulted by McGinley's comments and jokes made in the presence of his coworkers. Around July 10, 2008 Frazier complained to Nash-Finch (by its HR Coordinator, Kathy Marion) about the jokes, insults and derogatory comments made by McGinley about Frazier. Nash-Finch took no action against McGinley.

18. Around July 18, 2008 Frazier was subjected to further derogatory comments and disparate treatment, including insults, intimidation, ridicule and/or jokes, because of his bipolar disorder. Those who Frazier believed created his hostile work environment include, Mike McGinley, Ryan Schultz, Dustin Leach, Chris Watnick, Ken Watnick, Paul Wojick, Tony Melton, James Galindo, Justin Perzo, Eric Campbell, Lupe l/n/u and Kristen l/n/u. Frazier complained to Nash-Finch (by its agent, Charles Hurd).

4

Again, Nash-Finch failed to correct the situation and took no action to prevent the harassment. Nash-Finch told Frazier to "just deal with it".

19. Frazier continued to complain to Nash-Finch about his hostile work environment. Derogatory comments made to Frazier by his coworkers and/or management included, but are not limited to, "you are crazy", "retard", "on 4/20 I better stay away from you", "I hope you don't Columbine us", "snitch" and "snitch bitch". Almost daily Mike McGinley (warehouse supervisor) made derogatory remarks to Frazier about his mental state and about Frazier needing medication. Frazier complained to Nash-Finch's HR Coordinator (Kathy Marion) multiple times between August 2008 and January 2009 about the derogatory comments, disparate treatment, insults, intimidation, ridicule, and jokes. During October 2008, Frazier requested from Nash-Finch (by Mike McGinley and Kathy Marion) a transfer to a different department. Nash-Finch took no action to stop the harassment/discrimination and hostile work environment to which Frazier was subjected.

20. Mike McGinley took vacation from Nash-Finch around the end of January 2009. After McGinley returned from vacation, Frazier was suspended. Nash-Finch (by Mary Williams, Mike McGinley and Charles Hurd) suspended Frazier without pay around February 9, 2009. Frazier was suspended for violation of Rule #25 (verbal or physical threat to others). Frazier denied the allegation that he made verbal or physical threats to coworkers.

21. Nash-Finch asked Frazier to resign. Frazier was discharged on March 18, 2009. Nash-Finch considers Frazier to be permanently laid off.

5

22. Frazier filed the appropriate Form Five Charge of Discrimination with the Equal Employment Opportunity Commission, which is stamped received May 11, 2009.[1]

23. Frazier received a Notice of Right to Sue from the Equal Employment Opportunity Commission dated November 25, 2009, (received November 30, 2009) advising of the 90-days to file a Complaint against Nash-Finch.[2]

24. Frazier complained to his union in an effort to exhaust administrative remedies available to him prior to filing his EEOC Charge. After complaining to his union, Frazier was told that he would be terminated if he did not resign.

25. Upon information and belief, Nash-Finch did not discipline, suspend or terminate the coworkers who assaulted Frazier in the workplace.

### Verification

I hereby swear or affirm, under the penalty and pains of perjury, that the above representations of fact in paragraphs 4 through 25 are true and accurate.

_____ 12/22/09
Jason Frazier

### COUNT I

### AMERICANS WITH DISABILITIES ACT, AS AMENDED
### (Harassment, Discrimination and Retaliation)

Comes now the Plaintiff, by counsel, BLACHLY, TABOR, BOZIK & HARTMAN LLC, and hereby incorporates the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

---

[1] A copy of Frazier's EEOC Charge is attached hereto marked as Exhibit A, and is incorporated herein by reference.
[2] A copy of Frazier's Notice of Suit Rights is attached hereto marked as Exhibit B, and is incorporated herein by reference.

6

26. Plaintiff incorporates by reference paragraphs 4 through 25 of the Factual Background section as though fully set forth herein.

27. Nash Finch is engaged in an industry affecting commerce that has more than 100 employees for each working day in each of twenty (20) or more calendar weeks in the calendar year relevant herein, or the preceding calendar year.

28. Nash-Finch is an employer pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12112, et seq., as amended.

29. Frazier is a qualified individual with a disability pursuant to the Americans with Disabilities Act, 42 U.S.C. §§ 12112, et seq., and/or the ADA Amendments Act of 2008. The harassment, discrimination and retaliation Frazier suffered began during June 2008 and continued until his discharge from employment at Nash-Finch during March 2009.

30. During all times relevant to Plaintiff's Complaint, Nash-Finch was aware that Frazier was diagnosed with bipolar disorder. At all times relevant to Plaintiff's Complaint, Nash-Finch was aware that Frazier took medication to mitigate the effects of his bipolar disorder. Nash-Finch received information sufficient to put it on notice that Frazier had a well-recognized disability. At all times relevant to Plaintiff's Complaint, Nash-Finch regarded Frazier as having an impairment that substantially limits one major life activities, namely bipolar disorder.

31. During the course and scope of Frazier's employment with Nash-Finch, Nash-Finch, by its agents, servants, supervisors and/or co-employees, among others, acting within the course and scope of their employment, and in their individual capacities, demonstrated a continuous, repetitious, and degenerative cycle and pattern

7

of harassment and discrimination against Frazier based on Frazier's qualified disability (bipolar disorder) and/or Nash-Finch's perception of Frazier as being substantially limited in one or more major life activities, which Nash-Finch condoned and ratified, took no action to stop, and performed willfully or wantonly against Frazier, while Nash-Finch was aware or should have been aware of such misconduct by and through its agents, employees, servants and supervisors, among others, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12112, et seq., as amended, the ADA Amendments Act, and other sections of the same Statute.

32. Bipolar disorder is a recognized disability under the ADA Amendments Act.

33. Nash-Finch treated coworkers of Frazier who are not disabled, or whom Nash-Finch does not regard as disabled more favorably than Frazier, which Nash-Finch condoned and ratified, took no action to stop, and performed willfully or wantonly against Frazier, while Nash-Finch was aware or should have been aware of Frazier's disparate treatment by and through its agents, employees, servants and supervisors, among others, in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12112, et seq., as amended, the ADA Amendments Act, and other sections of the same Statute.

34. Nash-Finch's decision to discharge Frazier, whether through his resignation or termination, was based upon Frazier's disability or Nash-Finch's perception of Frazier as disabled.

35. During the course and scope of Frazier's employment with Nash-Finch, Nash-Finch, by its agents, servants, supervisors and/or co-employees, among others, acting within the course and scope of their employment, retaliated against Frazier for

8

Frazier having complained about the harassment and discrimination because of his disability and/or because Nash-Finch perceived him to be disabled which Frazier was lawfully entitled to do, which retaliation Nash-Finch, by its agents, servants, supervisors and/or co-employees, among others, condoned and ratified, took no action to stop, and performed willfully and wantonly against Frazier while Nash-Finch was aware or should have been aware of such conduct.

36. Further, Nash-Finch participated in a pattern and practice of such harassment, discrimination and retaliation by failing to provide Frazier a work environment free of harassment and/or discrimination, failing to suspend or discharge Frazier's coworkers (who are outside of Frazier's protected class of person) for violating the same company rule(s) that Frazier was falsely accused of violating, asking for Frazier's resignation and threatening Frazier with termination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12112, et seq., as amended, the ADA Amendments Act of 2008, and other sections of the same Statute.

37. Frazier has suffered and continues to suffer substantial losses and earnings, job experience, retirement benefits, and other employment benefits Frazier rightfully would have received absent Nash-Finch's harassment, discrimination and retaliation.

38. Frazier has incurred additional costs and expenses in prosecuting this civil action against Nash-Finch to protect the constitutional and statutory rights of Frazier with respect to Nash-Finch. Frazier has suffered humiliation, mental pain and anguish, embarrassment to name, character and reputation, decreased employability, loss of employment benefits, and intentional and negligent infliction of emotional distress as a

9

result of the harassment, discrimination and retaliation by Nash-Finch. The above acts by Nash-Finch and its agents, supervisors, employees and servants acting individually and in concert, were willful, wanton, malicious, intentional and oppressive, and justify the awarding of compensatory and punitive damages in favor of Frazier; and an award against Nash-Finch for his attorneys fees, expert witness fees and other costs associated in filing this Complaint against Nash-Finch.

WHEREFORE, Plaintiff, by counsel, request relief of the Court consisting of all damages afforded by law including, but not limited to, the following:

a. Compensatory and punitive damages;
b. Back pay;
c. Reinstatement with the same seniority status and benefits Frazier would have had but for his termination or, in the alternative, front pay;
d. Expenses of litigation and reasonable attorney fees and costs;
e. Prejudgment interest; and
f. All other just and proper relief in the premises, against said Defendant.

## COUNT II

### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
### (Hostile Work Environment and Retaliation)

Comes now the Plaintiff, by counsel, BLACHLY, TABOR, BOZIK & HARTMAN LLC, and hereby incorporates the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

39. Plaintiff incorporates by reference paragraphs 4 through 25 of the Factual Background section as though fully set forth herein.

40. Frazier complained to Nash-Finch (by Mike McGinley, Kathy Marion and Charles Hurd) of act of harassment and discrimination against him by his coworkers beginning June 2008. Frazier complained to Nash-Finch (by Kathy Marion and Charles Hurd) of acts of harassment, discrimination and retaliation against him by his coworkers

and his supervisor, Mike McGinley from July 2008 until his in March 2009. Frazier was physically threatened and humiliated by coworkers and/or his supervisor, Mike McGinley from June 2008 until Frazier's suspension in February 2009.

41. Frazier's workplace was permeated with pervasive discriminatory intimidation, ridicule, and insult that was sufficiently severe and altered the conditions of Frazier's employment, thus creating an abusive working environment. Frazier perceived his work environment to be hostile or abusive. A reasonable person would find such a work environment to be hostile or abusive.

42. Nash-Finch failed to exercise reasonable care to prevent and/or promptly correct the harassment, discrimination, retaliation and hostile work environment of which Frazier complained. Nash-Finch failed to offer Frazier preventive or corrective opportunities provided to otherwise avoid harm.

43. During October 2008, Frazier requested to be transferred to a different department, away from the coworkers and supervisor, Mike McGinely who physically threatened and/or humiliated Frazier. Frazier's request for transfer was denied in an effort to discourage Frazier from remaining on the job. Nash-Finch continued to subject Frazier to a work environment that was hostile or abusive.

44. Nash-Finch (by Mary Williams, Mike McGinley and Charles Hurd) suspended Frazier without pay in violation of its Collective Bargaining Agreement with District Lodge 90 (International Association of Machinists and Aerospace Workers AFL-CIO) and its Local Lodge #2903, and Local Union 135 (Chauffeurs, Teamsters, Warehousemen and Helpers facilitated with the International Brotherhood of Teamsters) in an effort to discourage Frazier from remaining on the job.

45. Nash-Finch compelled Frazier to resign, which resignation was involuntary. Nash-Finch discharged Frazier on March 18, 2009. Nash-Finch considers Frazier to be permanently laid off with no opportunity to be recalled from layoff.

46. Frazier engaged in a statutorily protected expression by opposing unlawful employment practices and by making complaints to Nash-Finch's supervisors and HR coordinator.

47. Frazier suffered an adverse employment action when he was told that he would be terminated if he did not resign. Frazier also suffered adverse employment action when he was discharged and Nash-Finch by its agents, servants, supervisors and/or co-employees, among others, acting within the course and scope of their employment, placed Frazier on permanent layoff with no hope of every being recalled, effective March 18, 2009. Said discharge was willful, wanton, malicious, intentional and oppressive and in violation of Title VII of the Civil Rights Act of 1964, as amended.

48. Upon information and belief, there is a causal connection between Frazier's statutorily protected expression and his discharge.

49. Frazier has suffered and continues to suffer substantial losses and earnings, job experience, seniority, retirement benefits, and other employment benefits, that Frazier rightfully would have received absent his discharge by Nash-Finch, and its agents, servants, supervisors and/or co-employees, among others, acting within the course and scope of their employment.

50. Frazier has incurred costs and expenses to file this action against Nash-Finch to protect the constitutional and statutory rights of Frazier with respect to Nash-Finch. Frazier has suffered humiliation, mental pain and anguish, embarrassment to

name, character and reputation, decreased employability, loss of employment benefits, and intentional and negligent infliction of emotional distress as a result of the hostile work environment and retaliation by Nash-Finch. The above acts by Nash-Finch and its agents, supervisors, employees and servants acting individually and in concert, were willful, wanton, malicious, intentional and oppressive, and justify the awarding of compensatory and punitive damages in favor of Frazier; and an award against Nash-Finch for his attorneys fees, expert witness fees and other costs associated in filing this Complaint against Nash-Finch.

WHEREFORE, Plaintiff, by counsel, request relief of the Court consisting of all damages afforded by law including, but not limited to, the following:

a. Compensatory and punitive damages;
b. Back pay;
c. Reinstatement with the same seniority status and benefits Frazier would have had but for his termination or, in the alternative, front pay;
d. Expenses of litigation and reasonable attorney fees and costs;
e. Prejudgment interest; and
f. All other just and proper relief in the premises, against said Defendant.

## COUNT III

### UNLAWFUL INTERFERENCE WITH ATTAINMENT OF BENEFITS AND RETALIATION (ERISA § 510 (29 U.S.C. §§ 1140 and 1132(a) and (c))

Comes now the Plaintiff, by counsel, BLACHLY, TABOR, BOZIK & HARTMAN LLC, and hereby incorporates the foregoing paragraphs of Plaintiff's Complaint, and states as follows:

51. Plaintiff incorporates by reference paragraphs 4 through 25 of the Factual Background section as though fully set forth herein.

52. Frazier was entitled to healthcare as a benefit of his employment at Nash-Finch. Frazier requested the benefit coverage from Nash-Finch.

13

53. While employed at Nash-Finch, Frazier was a participant in an employee benefit plan created and funded by Nash-Finch (hereinafter "Plan"), which provided health insurance benefits for Nash-Finch's employees and their families. The Plan was an "employee benefit plan" as defined by the Employee Retirement Income Security Act, 29 U.S.C. § 1002(3). Frazier was a "participant" as defined by 29 U.S.C. § 1002(7).

54. Nash-Finch knew Frazier had a medical condition, namely bipolar disorder, and prior to his termination, Frazier required treatment from healthcare provider(s) and prescription medication, which resulted in substantial health care costs being incurred by Nash-Finch's group health insurance carrier. Nash-Finch's managers, including without limitation, Mike McGinley and Nash-Finch's HR Coordinator, Kathy Marion were fully aware of Frazier's health issue at the time of Frazier's discharge. Frazier's health condition and his use of the Plan were motivating factors for Frazier's discharge.

55. Further, Nash-Finch knew or should have known Frazier would eventually require additional, significant treatment for his bipolar disorder. Before Frazier had an opportunity to request benefits for continued treatment of this condition, Nash-Finch compelled his resignation and discharged Frazier. Frazier was discharged for the purpose of avoiding payment of the future medical expenses under Nash-Finch's ERISA employee benefit plan. Frazier would have been entitled to healthcare and other employment benefits had he continued working at Nash-Finch.

56. Nash-Finch took action with specific intent to interfere with the attainment and receipt of benefits by Frazier under the Plan that Frazier paid for and was entitled to under the Plan, all in violation of Section 510 of ERISA, 29 U.S.C. § 1140. Nash-Finch

wrongfully denied Frazier employment benefits. Nash-Finch interfered with Frazier's rights under ERISA. Nash-Finch's conduct violated Section 510 of ERISA, 29 U.S.C. § 1140.

57. Frazier availed himself of healthcare treatment and medical care benefits of the Plan prior to Nash-Finch compelling his resignation and his discharge by Nash-Finch.

58. Frazier believes that his assertion of those statutorily conferred rights was a motivating factor in his discharge.

59. As a result of Frazier asserting his statutorily conferred rights, his discharge has caused Frazier damages.

60. Frazier seeks compensatory and punitive damages for wrongful discharge for asserting his statutorily conferred rights to be determined by the trier of fact, including damages for emotional distress, mental pain and suffering, humiliation, embarrassment to name, character and reputation, decreased employability, loss of employment benefits, and intentional and negligent infliction of emotional distress.

61. Frazier has had to hire an attorney to enforce his rights and requests attorney fees, expert witness fees and other costs associated in filing this Complaint against Nash-Finch.

WHEREFORE, the Plaintiff, by counsel, requests relief of the Court consisting of all damages afforded by law including, but not limited to, the following:

   a. Judgment for reinstatement to his employment status under the same terms and conditions that existed prior to termination of his employment, including participation in Nash-Finch's employee benefit plans, and backpay; or, alternatively award Frazier future benefits (front pay) and all other equitable relief in lieu of reinstatement;
   b. Award lost benefits to Frazier, or, alternatively restore Frazier to the Plan

15

  and credit Frazier with continued employment service for purposes of Nash-Finch's Plan, from the date of Frazier's discharge to the date he is restored;

c. Judgment for interest on the amount of lost wages and benefits as a result of Nash-Finch's unlawful conduct;
d. Judgment for emotional distress and humiliation Frazier has suffered as a result of Nash-Finch's unlawful conduct;
e. Judgment for compensatory and punitive damages;
f. Judgment for back pay;
g. Judgment for Frazier's reasonable attorney fees, expert witness fees and costs; and
h. Such other relief as the Court deems just and proper against said Defendant.

Respectfully submitted,<br>
Blachly, Tabor, Bozik & Hartman, LLC<br><br>
_____<br>
Jeffrey S. Wrage (Atty. #18262-64)<br>
56 S. Washington, Suite 401<br>
Valparaiso, Indiana 46383<br>
Ph. (219) 464-1041<br>
Fax (219) 464-0927<br>
jswrage@lawyersonthesquare.com<br>
Attorney for Plaintiff

## JURY DEMAND

COMES NOW the Plaintiff, Jason Frazier, by counsel, Jeffrey S. Wrage of BLACHLY TABOR BOZIK & HARTMAN LLC, and demands trial by jury.

Respectfully submitted,<br>
Blachly, Tabor, Bozik & Hartman, LLC<br><br>
_____<br>
Jeffrey S. Wrage (Atty. #18262-64)<br>
56 S. Washington, Suite 401<br>
Valparaiso, Indiana 46383<br>
Ph. (219) 464-1041<br>
Fax (219) 464-0927<br>
jswrage@lawyersonthesquare.com<br>
Attorney for Plaintiff